IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| XTREME INDUSTRIES, LLC, | § |
| Plaintiff, | § § § |
| vs. | § § |
| GULF COPPER & MANUFACTURING CORP., | § CIVIL ACTION NO. H-10-2488 § § § |
| Defendant. | § |

## MEMORANDUM AND ORDER

This is a contract dispute among three parties. Resolution has been delayed and complicated by the fact that two of the parties are in bankruptcy. The plaintiff in this case, Xtreme Industries, performed blasting and coating work on Viking Offshore's oil rig, the *Viking Producer*, under a subcontract with Gulf Copper & Manufacturing. Xtreme claims that it is still owed money for the services it performed under its subcontract; Viking and Gulf Copper claim that Xtreme's services were deficient and caused damages. The parties' disputes are spread across several courts, including the bankruptcy court for the Southern District of Texas, Houston Division, where Viking filed for bankruptcy protection under Chapter 11; this district court in the Southern District of Texas, Houston Division, where Xtreme's suit against Gulf Copper is pending; and the bankruptcy court for the Western District of Louisiana, Lafayette Division, where Xtreme filed bankruptcy under Chapter 11. The parties in the Texas bankruptcy court reached a compromise agreement. Xtreme's claims against Gulf Copper remain before this court. Viking and Gulf Copper have asserted damages claims against Xtreme that are filed as proofs of claim in the Louisiana bankruptcy court.

Xtreme has moved to transfer its case against Gulf Copper to the Western District of Louisiana, Lafayette Division, so that the claims can be considered by the bankruptcy court that is also considering the proofs of claims filed against Xtreme by Gulf Copper and Viking. (Docket Entry No. 2). Gulf Copper responded, (Docket Entry No. 4); Xtreme replied, (Docket Entry No. 6); and Gulf Copper surreplied, (Docket Entry No. 7). The parties appeared in this court to present oral argument on the motion. Based on the motion, response, and replies; the parties' submissions; the arguments of counsel; and the applicable precedent, this court grants Xtreme's motion to transfer the case pending in this court to the Western District of Louisiana, Lafayette Division. The reasons are explained below.

I.  **Factual and Procedural Background**

Viking Offshore entered into an agreement with Gulf Copper & Manufacturing, under which Gulf Copper agreed to perform blasting and coating work on Viking's oil rig, the *Viking Producer*. The rig was located at Gulf Copper's facility in Galveston, Texas. (Docket Entry No. 2, at 2). On November 16, 2006, Gulf Copper entered into an agreement with Xtreme. Under that agreement, Xtreme agreed to provide blasting and coating services related to the *Viking Producer*. (*Id.*, Ex. A, Master Service Agreement). Between December 14, 2006 and November 14, 2007, Xtreme performed these services on the *Viking Producer*, which Viking claims caused damage. Xtreme disputes that it damaged the *Viking Producer* and claims that it is entitled to be paid for its services under the Master Service Agreement.

The parties' positions on the others' liability can be summarized as follows:

- Viking claims that Xtreme and Gulf Copper (which had a subcontract with Xtreme) are liable for the alleged damages to the *Viking Producer* from Xtreme's defective blasting and coating work.

- Gulf Copper claims that Xtreme is liable to Gulf Copper for any liability Gulf Copper has to Viking. Gulf Copper also claims that Xtreme's defective performance under the subcontract excused Gulf Copper from its obligation to pay Xtreme.

- Xtreme denies causing damage to the *Viking Producer* and claims that it performed its contract obligations and is entitled to full payment by either Viking or Gulf Copper.

Viking filed for bankruptcy on February 29, 2008 in the United States Bankruptcy Court for the Southern District of Texas.[1] Gulf Copper filed a proof of claim in that proceeding for payment for the services it performed on the *Viking Producer*. Viking did not contest this proof of claim. Xtreme also filed a proof of claim against Viking because Xtreme had not been paid the full amount under its Master Service Agreement with Gulf Copper. Viking responded to Xtreme's proof of claim by filing an adversary complaint, alleging that Xtreme's poor workmanship on the *Viking Producer* caused damage. (Docket Entry No. 2, at 2).

In addition to filing a proof of claim against Viking in the Southern District of Texas bankruptcy court, on May 2, 2008, Xtreme sued Gulf Copper in this court. Xtreme asserted claims for breach of contract and *quantum meruit* and sought payment for the services it performed on the *Viking Producer*. (*Id.*, Ex. B, Civil Complaint). This court entered an order referring the case to the

---

[1] Five Viking entities (Viking Offshore (USA) Inc., Viking Producer Inc., Viking Prospector Inc., Viking Century Inc., and Viking Drilling ASA) filed voluntary Chapter 11 petitions. On March 4, 2008, the court consolidated these petitions and on March 10 entered an order designating them as complex.

bankruptcy court, which consolidated it with Viking's adversary complaint against Xtreme into a single adversary proceeding. (Docket Entry No. 1, Report and Recommendation, at 2).

On June 23, 2009, while the consolidated adversary proceeding was pending in the Texas bankruptcy court, Xtreme filed a Chapter 11 petition in the Western District of Louisiana bankruptcy court. The proceeding was later converted into one under Chapter 7. On July 22, 2009, the Louisiana bankruptcy court granted Xtreme's motion for relief from its automatic bankruptcy stay so that the Texas bankruptcy court could rule on pending motions for summary judgment related to the consolidated adversary proceeding. (*Id.*, Ex. D, Xtreme's Motion for Relief). The Texas bankruptcy court granted Viking's and Gulf Copper's motions for partial summary judgment against Xtreme. In that ruling, the court determined that Xtreme waived its right to assert a lien against Viking, that Xtreme was not entitled to attorneys' fees against Gulf Copper, and that Xtreme was not entitled to recover from Gulf Copper on a *quantum meruit* claim. (Docket Entry No. 1, Report and Recommendation, at 3).

On October 21, 2009, after the Texas bankruptcy court's partial summary judgment ruling, Gulf Copper filed a proof of claim against Xtreme in the Louisiana bankruptcy court. Gulf Copper claimed a right to recover any amounts it was required to pay Viking because of Xtreme's defective work. (*Id.*, Ex. C, Gulf Copper Proof of Claim). On November 25, 2009, Xtreme again moved in the Louisiana bankruptcy court for relief from the automatic stay, to continue to pursue its claims in the consolidated adversary proceeding in the Texas bankruptcy court. (*Id.*, Ex. D, Xtreme's Motion for Relief). The Louisiana bankruptcy court granted this motion. (*Id.*, Ex. E, Minute Entry Granting Motion for Relief from Stay).

On December 11, 2009, Viking reached a compromise agreement with Gulf Copper, which the Texas bankruptcy court approved. Under the agreement, Gulf Copper agreed to reduce the amount of its secured claim against Viking, and Viking agreed to cooperate in joint litigation against Xtreme.[2] Months later, on May 11, 2010, Viking and Xtreme also reached a compromise agreement. Under this agreement, which the Texas bankruptcy court approved, Viking would file a proof of claim in Xtreme's bankruptcy case, Xtreme would not contest the proof of claim, Xtreme would withdraw its proof of claim against Viking in the Texas bankruptcy court, and Viking would dismiss its claims against Xtreme in the consolidated adversary proceeding pending in that court. (Docket Entry No. 1, Report and Recommendation, at 4). After these steps, there were no longer any claims by or against Viking in the consolidated adversary proceeding in the Texas bankruptcy court. (*Id.*, at 9). Xtreme then filed a motion asking the Texas bankruptcy court to transfer the adversary proceeding to the Louisiana bankruptcy court.

The Texas bankruptcy court issued a Report and Recommendation holding that it lacked subject-matter jurisdiction to rule on Xtreme's motion to transfer. The court reasoned that because the parties' compromise agreements had eliminated Viking — the bankruptcy debtor — from the consolidated adversary proceeding, it was no longer a core proceeding under 42 U.S.C. §157(b)(1)–(2). The Texas bankruptcy court found that it no longer had subject-matter jurisdiction and recommended that this court consider Xtreme's motion to transfer.

In its motion to transfer, Xtreme argues that venue is appropriate under 28 U.S.C. § 1409 in the Louisiana bankruptcy court because Xtreme's claims against Gulf Copper relate to Xtreme's

---

[2] On January 12, 2010, Gulf Copper filed a motion in the Texas bankruptcy court seeking leave to file counterclaims against Xtreme. The Texas bankruptcy court had not ruled on this motion.

bankruptcy pending in that court.[3] Xtreme argues that the private interest factors weigh in favor of transferring to the Louisiana bankruptcy court. Those private interest factors are: (1) four of Xtreme's nonparty fact witnesses reside closer to the Louisiana bankruptcy court than to this court and are outside this court's subpoena power; and (2) Xtreme has insufficient funds to support trial proceedings and related travel expenses for its fact witnesses in this court. As to the public interest factors, Xtreme argues that: (1) the docket of the Southern District of Texas, Houston Division, is more congested than the docket in the Western District of Louisiana, making transfer to that court a more efficient use of judicial resources; and (2) the State of Louisiana has an interest in the case because the majority of Xtreme's creditors are located there.

In its response, Gulf Copper argues Xtreme has failed to demonstrate that venue is proper in the Louisiana bankruptcy court. Gulf Copper argues that 28 U.S.C. § 1409 is inapplicable because "the present case is not an adversary proceeding in the Xtreme bankruptcy; rather, once referred to the bankruptcy court, the case was an adversary proceeding in the Viking bankruptcy." (Docket Entry No. 4, at 8). Gulf Copper asserts that private interest factors weigh in favor of trying the case in this court because the evidence related to the lawsuit is in the Southern District and eleven of Gulf Copper's nonparty fact witnesses reside in the Southern District. As to the public interest factors, Gulf Copper argues that this court's district is not so congested that it could not absorb this case;

---

[3] Xtreme moved to transfer under both 28 U.S.C. § 1404 and § 1412. Section 1412 is the Bankruptcy Code's discretionary change of venue statute. It provides, "a district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Courts are split as to whether "a case or proceeding under title 11" includes non-core proceedings, "i.e., those proceedings that merely are 'related to' a case under title 11." *See Sabre Techs., LP v. TSM Skyline Exhibits, Inc.*, Civ. A. No. H-08-1815, 2008 WL 4330897, at *8 (S.D. Tex. Sept. 18, 2008) (listing cases). This suit is a noncore proceeding because the alleged breaches of contract occurred before Xtreme's bankruptcy petition. *In re Hallwood Energy, LP*, 2009 WL 2601294, at *4 (Bankr. S.D. Tex. Aug. 24, 2009) ("Where all of a case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core to the bankruptcy proceeding."). Because this court finds transfer appropriate under § 1404, it does not reach the issue of whether it is also appropriate under § 1412.

P:\CASES\2010\10-2488\10-2488.a5.wpd

6

Texas has an interest in the case being tried in this court; and this court is more familiar with the Texas law that applies. Alternatively, Gulf Copper moves for transfer to the Eastern District of Texas.

The arguments are analyzed based on the record and the applicable law.

## II. The Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406 (providing that a district court may dismiss a case improperly filed in the wrong district or division or, in the interest of justice, transfer the case to any district or division in which it could have been brought). A district court has "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)). The party seeking transfer must show that "the transferee venue is . . . clearly more convenient." *In re Volkswagen*, 545 F.3d at 315. Public and private interests factors are relevant. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.' The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.' *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight." *Id.* (quotations and alternations omitted).

The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a). *Spiegelberg v. Collegiate Licensing Co*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005) (citing *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993)). When the distance traveled is beyond 100 miles, inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). In considering the convenience of witnesses, however, the relative convenience to key witnesses and key nonparty witnesses is accorded greater weight in the venue transfer analysis. *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009) (listing cases). For example, the convenience of one key witness may outweigh the convenience of numerous less important witnesses. *Remmers v. United States*, 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009) (citing *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F.Supp.2d 663, 668 (S.D. Tex.1999)). Among party and nonparty key witnesses, a court should give greater weight to the availability and convenience of nonparty, key witnesses. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). However, the convenience of expert witnesses is generally entitled to little weight on a motion to transfer venue. *Mid-Continent Cas. Co.*, 629 F. Supp. 2d at 763.

### III. Analysis

#### A. Venue

A transfer of venue under § 1404 is appropriate only if the transferring court is a proper venue for the action and if the case is transferred to a venue in which the suit could originally have

been brought. *See* 28 U.S.C. § 1404. Venue was proper in this court when the case was filed. Venue is proper in the Western District of Louisiana as well. 28 U.S.C. § 1409(a) provides for venue in a bankruptcy court for "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." This case is related to Xtreme's bankruptcy. Gulf Copper has filed a proof of claim in Xtreme's bankruptcy, which both parties acknowledge relates to the same dispute that is the subject of this litigation. If Xtreme prevails in its claims against Gulf Copper, the proceeds will be distributed to Xtreme's creditors. And if Gulf Copper prevails in its claims against Xtreme, it will become Xtreme's creditor in the bankruptcy. Gulf Copper argues that § 1409(a) is inapplicable because under the compromise agreements, this dispute no longer relates to Viking's bankruptcy in the Texas bankruptcy court. But Xtreme seeks transfer to the Louisiana court, where its bankruptcy proceeding is pending. Under § 1409(a), venue is proper in both the proposed transferor and transferee courts.

**B. Transfer**

**1. The Fact that the Plaintiff is Seeking Transfer**

Gulf Copper argues that transfer is inappropriate because Xtreme selected this Texas forum and is now seeking transfer. Although § 1404 does not limit transfer motions to a defendant, a leading treatise has noted that "[i]t seems quite logical that the burden should be at least as heavy on a plaintiff who seeks to change the forum that he or she had selected as it is when the defendant is the moving party." 15 CHARLES ALAN WRIGHT, *ET AL.*, FEDERAL PRACTICE AND PROCEDURE § 3848, at 163 (3d ed. 2007). At the same time, "as with all Section 1404(a) determinations, the particular circumstances surrounding the transfer motion must be considered by the district judge." *Id.* at 163–64. Court have held that to prevail on a motion to transfer venue, "a plaintiff must show

that circumstances have changed since the filing of the suit." *See Moto Photo, Inc. v. K.J. Broadhurst Enters., Inc.*, No. 301CV2282-L, 2003 WL 298799, at *3 (N.D. Tex. Feb. 10, 2003) (listing cases); *see also Interamerican Quality Foods, Inc. v. Parrot Ice Drink Products of Am., Ltd.*, Civ. A. No. SA-09-CV-473-XR, 2010 WL 376407, at *1 (W.D. Tex. Jan. 25, 2010). Xtreme has made this showing. When Xtreme initially sued Gulf Copper in this court, Xtreme was not in bankruptcy and there was a related bankruptcy pending in the Southern District of Texas. Xtreme filed for Chapter 11 bankruptcy in the Louisiana bankruptcy court and now seeks transfer to that court. The related bankruptcy proceeding in the Southern District of Texas has been resolved. The circumstances surrounding the lawsuit filed in this court have changed.

It is also worth noting that the parties have agreed to transfer aspects of their dispute to the Louisiana bankruptcy court. Viking and Xtreme agreed that Viking would file a proof of claim in Xtreme's bankruptcy case, that Xtreme would not contest the proof of claim, that Xtreme would withdraw its proof of claim against Viking in the Texas bankruptcy court, and that Viking would dismiss its claims against Xtreme in the consolidated adversary proceeding pending in that court. Gulf Copper and Viking agreed to cooperate in litigation against Xtreme, and Gulf Copper has filed a proof of claim against Xtreme in the Louisiana bankruptcy court. The parties' agreements provides further basis for Xtreme seeking transfer.

2.  **The Private Interest Factors**

The private interest factors weigh in favor of transferring this case to Louisiana. The first factor, the relative access to sources of prove, is neutral because both parties acknowledge that all discovery has been complete. (Docket Entry No. 2, at 8); (Docket Entry No. 4, at 10). The second and third factors, the availability of compulsory process to secure the attendance of witnesses and

the witnesses' convenience, weigh in favor of transfer. Xtreme has identified four witnesses beyond the reach of this court's subpoena power and Gulf Copper has identified eleven witnesses beyond the reach of the Louisiana court's subpoena power. Many of Gulf Copper's witnesses are its employees. And although Gulf Copper has identified more witnesses than Xtreme who are outside the reach of this court's subpoena power, many of these witnesses are Gulf Copper employees and appear likely to offer duplicative testimony. By contrast, Xtreme has identified four nonparty witnesses located in Louisiana: John Romero, Xtreme's former president; Glynn Russo, Xtreme's former operations manager; Darrell Charles, Sr., Xtreme's former project manager; and Donald Dupuis, a former employee of Odin Rig Services, who gave Xtreme instructions related to the *Viking Producer*. (Docket Entry No. 2, at 3–4). Xtreme has also described the areas of these witnesses' testimony. Romero will testify about the amounts Gulf Copper owed Xtreme; Russo will testify on "the bidding process, change orders, purchase orders, and invoices," as well as the instructions Odin gave Xtreme; Charles will testify about the "scope and quality of work performed by Xtreme" as well as the instructions given by Odin; and Dupuis will testify about "the directions given to Xtreme and the schedule given to Xtreme for completing its work." (Docket Entry No. 2, Ex. 4, Ann Webb Affidavit). The inconvenience to these four nonparty witnesses if the case remains in Texas weighs in favor of transfer to the Louisiana court.

Gulf Copper argues that it has identified eleven nonparty witnesses who would be inconvenienced by the transfer. Seven of these witnesses are current employees of Gulf Copper: Leonard Hale, the vice-president; Steve Haskew, the manager of the Galveston yard; Thomas Noble, Jr., the project manager for the *Viking Producer* project; Rodrigo Ramos, a superintendent involved in the *Viking Producer* project; Mike Haughton, a risk manager for the *Viking Producer* project;

Laurie Washington, chief accounting manager; and Mary Ann Wells, assistant accounting manager. (Docket Entry No. 4, Ex. H, Steve Hale Affidavit). Courts have held that the inconvenience for party-employee witnesses is not as significant as for nonparty witnesses. *See Mid-Continent*, 629 F. Supp. 2d at 763. And although Gulf Copper has identified the names and positions of the witnesses, there is no description of the subject or importance of their testimony. *See McGinnis v. Eli Lilly and Co.*, 181 F. Supp. 2d 684, 688 (S.D. Tex. 2002) (holding that defendant must identify key witnesses and summarize their likely testimony to demonstrate why they could not conveniently testify in the district in which the suit had been filed); *Norton v. Encompass Servs. Corp.*, 301 B.R. 836, 839–40 (S.D. Tex. 2006) (finding that a party seeking transfer must identify the general contents of the witness's testimony). These decisions make it clear that courts evaluate the subject and importance of a witness's testimony in ruling on a motion to transfer. In this case, the party seeking transfer, Xtreme, has described the subjects that its distant witnesses will testify about. The party opposing transfer, Gulf Copper, has failed to identify the subject or importance of these witnesses' testimony, diminishing any weight that should be given to their convenience. Third, as Xtreme points out, the testimony of many of these witnesses may be duplicative or redundant. Noble, Haskew, Haughton, and Hale are executives at Gulf Copper and appear to be testifying about the parties' contractual relationship. Courts look to whether a witness is a "key" witness in deciding motions to transfer and given greater weight to the hardships of such witnesses. *See Mid-Continent*, 629 F. Supp. 2d at 762–63; *Mohamed*, 90 F. Supp. 2d at 775; *Remmers*, 2009 WL 3617597, at *5. If these witnesses' testimony is of reduced importance or redundant, that diminishes the weight to be given the inconvenience to them or the difficulty in obtaining their testimony.

Gulf Copper has also identified four witnesses who are not its employees and who are outside the subpoena range of the Louisiana court. They are: Mike Cammack, who worked for both Odin and Viking; Youllonda Driver, Viking's former chief financial officer; Phillip Achee, who works for International Paint, the company that sold the paint used on the *Viking Producer*; and Rob McCann, who also works for International Paint. (Docket Entry No. 4, Ex. H, Steve Hale Affidavit). But Gulf Copper has not described the subject or importance of their testimony. Xtreme argues that these witnesses are also likely to provide duplicative testimony. One of the nonemployee witnesses, Driver, is Gulf Copper's former chief financial officer. But Gulf Copper has also identified as witnesses its current chief accounting manager (Driver), and its assistant accounting manager (Wells). The record provides no basis to conclude that Driver could provide any testimony that Washington and Wells could not. And while Gulf Copper has also identified two witnesses employed by International Paint, it has not described the subject of their testimony. By contrast, Xtreme has identified four nonparty key witnesses and described the substance and importance of their testimony. This factor weighs in favor of transfer.

The fourth factor – all other practical problems that affect whether trial is expeditious and inexpensive – also weighs in favor of transferring the case to Louisiana. Xtreme is a Chapter 7 debtor in the Louisiana bankruptcy court. Gulf Copper has filed a proof of claim in the Louisiana bankruptcy court, seeking to hold Xtreme liable for any amount Gulf Copper may be determined in this lawsuit to owe Viking. In the Texas bankruptcy court, Gulf Copper also sought leave to amend its answer so that it could file a counterclaim against Xtreme based on the same theory. Under the agreement between Xtreme and Viking, Viking will also file a proof of claim in the Louisiana bankruptcy court for the damage it claims Xtreme caused to the *Viking Producer*. Because Xtreme

is already in the Louisiana bankruptcy court, where Gulf Copper and Viking have both filed proofs of claim that arise from the same events and dispute as this case, the most expeditious and efficient trial would be in the Louisiana bankruptcy court.

Together, the private interest factors weigh in favor of transferring this case to Louisiana.

### 3. The Public Interest Factors

The public interest factors also weigh in favor of transferring this case to the Western District of Louisiana. The first factor, the administrative difficulties flowing from court congestion, is neutral. Xtreme has provided caseload profiles for both the Southern District of Texas and the Western District of Louisiana. For 2009, the caseload profiles show that the Southern District had 10,364 cases pending for the twelve-month period ending on September 30, 2009 whereas the Western District of Louisiana had 2,557. (Docket Entry No. 2, Ex. 4, Judicial Caseload Profile). For the same time period, the caseload profile also shows that the Southern District had a 6.9 month "filing to disposition" average and 19 month "filing to trial average." The Western District had a 12.4 month "filing to disposition average" and a 29 month "filing to trial average."[4] The number of cases filed in the Southern District weighs in favor of transferring the case, but the "filing to disposition" and "filing to trial" averages both weigh in favor of denying the motion to transfer. This factor is neutral.

The second factor, the local interest in having localized interests decided at home, may weigh slightly in favor of retaining this case. Xtreme argues that its creditors are primarily located in

---

[4] An attorney for Xtreme has also provided an affidavit stating that a law clerk for the Louisiana bankruptcy court personally informed her that the court could try the case relatively quickly. (*Id.*, Ex. 4, Ann Webb Affidavit). Gulf Copper objects to this as inadmissible hearsay. This testimony does not provide any weight because this court could also try this case when the parties are ready.

Louisiana and have an interest in the outcome of the lawsuit. But this second factor primarily recognizes the interest in having disputes that arise in a forum or significantly affect that forum adjudicated in that forum. Gulf Copper has argued that the events giving rise to Xtreme's claim occurred in Galveston, Texas, and involved a Texas corporation. The second factor recognizes this interest and weighs slightly in favor of retaining this case in Texas.

The third factor, the familiarity of the forum with the law that will govern the case, is neutral. A federal court in Louisiana likely has some experience in applying Texas law and the parties' dispute is a relatively straightforward breach of contract claim. Similarly, the fourth factor, the avoidance of unnecessary conflict of law problems or the application of foreign law, is neutral. The parties do not raise any conflict-of-law issues and a Louisiana bankruptcy court will have little difficulty in applying Texas law to this case.

Courts have also recognized a public interest in judicial economy. *See, e.g., City of Liberal, Kan. v. Trailmobile Corp.*, 316 B.R. 358, 361 (Bankr. D. Kan. 2004). This interest weighs in favor of transferring the case. As noted, both Gulf Copper and Viking have filed proofs of claim in the Louisiana bankruptcy court relating to this suit. The Louisiana court cannot resolve the proofs of claim unless the merits of the dispute in this court are resolved. The most efficient use of judicial resources is to have the Louisiana bankruptcy court hear this litigation and resolve the proofs of claim, not to wait for this court to rule on Xtreme's claims in this court and then have the Louisiana bankruptcy court resolve the effect of this court's decision on Viking's and Gulf Copper's proofs of claim. On this record, the public interest in judicial economy outweighs the public interest in having local disputes resolved locally.

Gulf Copper also argues that under the forum-selection clause in its agreement with Xtreme, the motion to transfer venue should be denied. This clause provides no basis to deny Xtreme's motion to transfer and thereby leave the litigation in the Southern District of Texas, Houston Division. The forum selection clause provides: "Venue of any litigation shall be Jefferson County, Texas. Contractor hereby submits to the non-exclusive jurisdiction of the state and federal courts sitting in Beaumont, Texas." (Docket Entry No. 4, Ex. A, Master Service Agreement, ¶ 19). Under the second sentence of the clause, Xtreme submits to the *"non-exclusive"* (emphasis added) jurisdiction of the state and federal courts in Beaumont, Texas. This clause does not make venue proper only in a state or federal court in Beaumont, Texas and does not require denying Xtreme's motion to transfer.

Finally, Gulf Copper argues that this court should transfer the case to Beaumont, Texas because it is closer to Xtreme's witnesses. But there are other witnesses — including key nonparty witnesses — who will be inconvenienced by this transfer. *See X Techs., Inc. v. Marvin Test Sys., Inc.*, No. Civ. A. SA-10-CV-319, 2010 WL 2303371, at *4 (W.D. Tex. June 7, 2007) ("The party moving to transfer must persuade the Court that transfer would signify more than shifting inconvenience from one party to another." (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)); *see also Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835768, at *7 (E.D. Tex. Sept. 28, 2010) (rejecting motion to transfer and noting that the "defendants' attempt to move this trial from the Eastern District of Texas to the Northern District of California would merely shift the inconvenience of trial from one set of parties to another"); *Mannatech, Inc. v. Country Life, LLC*, Civ. A. No. 3:10-CV-533-O, 2010 WL 2944574, at *3 (N.D. Tex. July 26, 2010) (" [A] decision to transfer venue must not simply shift the expense and inconvenience of litigating in a particular venue

from one party to the other."). Additionally, a transfer to Beaumont does not produce the same efficiencies in judicial resources as a transfer to Louisiana, where the bankruptcy proceedings are pending.

### IV.   Conclusion

Xtreme's motion to transfer is granted. This case is transferred to the Western District of Louisiana, Lafayette Division, to be considered for referral to the bankruptcy court handling the Xtreme bankruptcy proceeding.

SIGNED on December 1, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge